Loughney, Receiver, Appellant, *v.* Page.

Argued January 6, 1936. Before KEPHART, C. J., SCHAFFER, DREW, LINN and BARNES, JJ.

*Thomas F. Mount,* with him *Joseph W. Henderson,* of *Rawle & Henderson,* for appellant.

*Wayne P. Rambo,* with him *J. Channing Ellery* and *Robert Mair,* for appellee.

510

OPINION BY MR. JUSTICE DREW, January 31, 1936:

The action is ejectment. Judgment on the pleadings was entered in defendant's favor and plaintiff has appealed.

On April 15, 1925, Paul Wendler, Jr., purchased the premises in question and paid the purchase price with his own money; title was taken in the name of his wife. On the same day, Mrs. Wendler, with the joinder of her husband, conveyed the property to Elmer B. Hampton, a straw man for Wendler. The latter had been, and continued, in possession of the premises. In 1928 defendant obtained a judgment against Wendler. A scire facias to revive was issued in 1929, at which time Hampton was summoned as terre-tenant. Judgments in defendant's favor were obtained against Wendler and Hampton. Later in the same year, Dominick Anastasi, et al., secured a judgment against Hampton, which judgment was subsequently marked to the use of the Mt. Airy National Bank and Trust Company, the predecessor of the institution now in plaintiff's hands. In the meantime Hampton had conveyed to Jesse L. Stetler, another straw man. In 1930 defendant caused execution to be issued, and on June 2d of that year the premises were duly sold as the property of Wendler; defendant became the purchaser. Subsequent to defendant's levy, but prior to his sale, the bank levied execution on its judgment against Hampton, and on July 7, 1930, the property was again sold by the sheriff, the bank becoming the purchaser. In the present proceeding we are called upon to settle the disputed question of title as between the bank, now represented by plaintiff, and defendant.

Although he was neither the record owner nor the holder of the legal title, Wendler was at all times the beneficial owner. Having the equitable title, he could demand the legal title at any time. A resulting trust in his favor arose when he paid for the property but had title taken in his wife's name. This beneficial interest

persisted after the conveyance to Hampton. Defendant's judgment, therefore, was against one who held the complete equitable interest, together with the right to call for the legal title. When defendant levied execution and proceeded to have the property sold, the levy attached to the complete interest of the debtor, and it was that interest which was purchased by defendant. The net effect of defendant's procedure was twofold: (1) the acquisition by him of the equitable title, and (2) the demand for and the receipt by him of the legal title. It would seem to follow that defendant's title was complete.

Plaintiff argues, however, that the bank was protected against any secret beneficial interest by the Act of June 4, 1901, P. L. 425. He contends that the bank acquired a lien by virtue of the statute, that the lien so acquired was not subsequently divested by defendant's sale, and that the bank acquired a perfect title as a result of the sale had on its judgment. The statute provides: "That whenever hereafter a resulting trust shall arise with respect to real property, by reason of the payment of the purchase money by one person, and the taking or making of the legal title in the name of another, if the person advancing the purchase money has capacity to contract, such resulting trusts shall be void and of none effect as to bona fide judgment or other creditors, or mortgagees of the holder of the legal title, or purchasers from such holder without notice, unless either (1) a declaration of trust in writing has been executed and acknowledged by the holder of the legal title, and recorded in the recorder's office of the county where the land is situated, or (2) unless an action of ejectment has been begun, in the proper county, by the person advancing the money, against the holder of the legal title." Prior to the Act of 1901 a judgment bound only the interest the debtor actually had in real estate standing in his name: Reed's App., 13 Pa. 476; Sill v. Swackhammer, 103 Pa. 7; see Burns v. Coyne, 294 Pa. 512, 516. The Act of 1901

changed the law and, in the situation specified by it, extended protection to a bona fide judgment creditor who had in good faith and without notice acquired a judgment against the holder of the legal title: Rochester Trust Co. v. White, 243 Pa. 469. The statute has been strictly construed, however, and its application is limited to the single case of a resulting trust arising "by reason of the payment of the purchase money by one person, and the taking or making of the legal title in the name of another": Rosa v. Hummel, 252 Pa. 578. Expressly within the terms of the act was the trust that arose when Wendler paid the purchase price and took title in his wife's name. But the act does not apply to the trust that arises where a conveyance is made without any consideration, and it appears from the circumstances that the grantee was not intended to take beneficially: Rosa v. Hummel, supra. The conveyance to Hampton was of the latter variety.

In our treatment of the case we have assumed that defendant's judgment of 1928 fixed no record lien upon the property and that none was acquired by the revival proceedings. Hampton was not a terre-tenant (see Hulett v. Mutual Life Ins. Co., 114 Pa. 142; Handel and Hayden B. and L. Assn. v. Elleford, 258 Pa. 143), and the scire facias action was ineffective to fasten a record lien upon the land. In due compliance with the statutory requirements, however, defendant proceeded to cause the interest of the beneficial owner to be exposed at judicial sale. The measures he took were sufficient to bind the property and pass the debtor's interest, and the fact that he had previously acquired no record lien was of no importance. Wendler held the entire beneficial interest in the property, and the sale upon the judgment against him passed that interest to defendant. Defendant in effect demanded and received the legal title as a result of the sale, thereby making its ownership complete, and the bank's subsequent sale was consequently of no effect.

Judgment affirmed.